IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KEITH DAUGHERTY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STEAK N SHAKE, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:14-CV-00152-SPM |

## MEMORANDUM AND ORDER

Plaintiff Michael Daugherty brought this action against Defendant Steak N Shake for alleged violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 *et seq.* (the "ADA"), and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* (the "Civil Rights Act"). Plaintiff claims servers at Defendant's restaurant discriminated against him and three friends, all of whom are disabled (one using a motorized wheelchair and the rest using canes) and African American, by ignoring them or otherwise refusing to serve them until they attempted to leave the restaurant. Plaintiff contends this treatment violated his civil rights because white customers who entered the restaurant after Plaintiff and his friends were promptly served. Plaintiff further contends that Defendant failed to adequately train its employees and seeks injunctive relief to prohibit Defendant and

1

its employees from engaging in similar conduct in the future. Defendant has moved for summary judgment arguing that Plaintiff cannot establish essential elements of his discrimination claims. Defendant further contends that Plaintiff lacks standing to seek injunctive relief. (Doc. 48). For the reasons stated below, the motion will be granted.

## I. FACTUAL BACKGROUND[1]

Defendant Steak N Shake operates a restaurant located at 10459 Page Avenue in St. Louis, Missouri. It is Defendant's policy to immediately greet, seat, and serve all customers who enter its restaurant. If a customer is part of an incomplete party, Defendant's policy is to give the customer the choice of placing an order, ordering drinks, or waiting for the rest of their party.

On the morning of October 11, 2012, Plaintiff and three friends met for breakfast at Defendant's Page Avenue restaurant. Plaintiff and his friends are all African American and, on the morning of October 11th, all of the men used assistive devices for locomotion (one used a motorized wheelchair and Plaintiff and the other two men used canes). When Plaintiff arrived at the restaurant, two of his friends were already seated inside. Plaintiff went in to join them and was

---

[1] The following facts are not intended to be an exhaustive dissertation of the undisputed and disputed facts in this case. Rather, the following is intended to be a summary of facts, both undisputed and disputed, sufficient to put in context the parties' arguments concerning the Defendant's motion for summary judgment. The court will discuss any specific factual disputes, and the extent to which they may be material, in the context of its legal analysis.

initially greeted by two African American servers (Christine Scott and Johnetta Williams). When the servers said nothing beyond their initial greeting, and failed to offer to seat Plaintiff, Plaintiff seated himself with his friends. The fourth member of the party joined the group approximately five minutes after Plaintiff arrived.

Although neither Plaintiff nor any of his friends got up to approach any of the servers, Plaintiff's friends made multiple attempts to get the attention of the two servers by waving and calling. They were ignored. While Plaintiff and his friends were waiting to be served, two different white male customers entered the restaurant. Each was waited on and served. After approximately twenty-five minutes without a server approaching Plaintiff's table, Plaintiff and his friends left the restaurant. As Plaintiff and his friends were leaving the restaurant, an employee from the restaurant followed Plaintiff to the parking lot, apologized, and offered to serve Plaintiff. Plaintiff refused to return to the restaurant.

Later the same day, Plaintiff contacted Defendant's hotline and made a complaint about being denied service. Defendant's District Manager called Plaintiff the same day to discuss his complaint, apologized to him, and mailed him a $35 gift card. Plaintiff has not used the gift card but testified that he would return to the restaurant in the future if a court enjoins Defendant from discriminating against him.

In her deposition, Defendant's corporate representative, Adrianne Pfeiffer, conceded that twenty-five minutes is a long time for a customer not to have any contact with a server, and that such a customer might realistically believe he or she was not going to get served at all. Cornelia Kimbrough, a server who worked at the restaurant on October 11th, similarly testified that it would be "unusual" for a party of four to wait twenty-five minutes without being served, given menus, offered water, drinks, or having their orders taken. Both Pfeiffer and Kimbrough testified that they would understand why such a party might leave the restaurant under such circumstances.

## II. THE LEGAL STANDARD FOR SUMMARY JUDGMENT

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

party meets this initial burden, the non-moving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. The non-moving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in favor of the nonmoving party. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## III. DISCUSSION

### A. PUBLIC ACCOMMODATION RACE DISCRIMINATION CLAIM

Plaintiff claims Defendant violated Title II of the Civil Rights Act of 1964, which prohibits racial discrimination in public accommodations and guarantees that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of

public accommodation . . . without discrimination or segregation on the ground of race[.]" 42 U.S.C. § 2000a(a). Where, as here, there is no direct evidence of racial discrimination, courts faced with a Title II public accommodation claim typically borrow the burden-shifting framework articulated in the Title VII employment discrimination case, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), to determine whether a Title II plaintiff has met his or her burden of proof.[2]

Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination; if the plaintiff establishes a prima facie case, the defendant must produce evidence of a legitimate, nondiscriminatory reason for the action to rebut the presumption of discrimination raised by the prima facie case. If the defendant carries its burden, the plaintiff must offer sufficient evidence to create a genuine issue of material fact as to whether the defendant's explanation is merely a pretext for discrimination, which means the plaintiff must demonstrate both that the proffered reason was false and that discrimination was the real reason. *See Johnson v. AT&T Corp.,* 422 F.3d 756, 761-63 (8th Cir. 2005) (articulating the *McDonnell*

---

[2] Case law interpreting Title II is scarce and the Eighth Circuit has not directly examined whether courts should analyze such claims under the *McDonnell Douglas* framework, but has suggested that the burden-shifting framework is appropriate in Title II cases. *See Adams v. BSA-Chickasaw Council,* 271 F.3d 769, 776–78 (8th Cir. 2001) (no reversible error when district court applied a burden-shifting analysis in a Title II case). Other circuits have applied the *McDonnell Douglas* framework in this context. *See, e.g., Fahim v. Marriot Hotel Servs., Inc.,* 551 F.3d 344, 349–50 (5th Cir. 2008); *United States v. Lansdowne Swim Club,* 894 F.2d 83, 88 n. 7 (3d Cir. 1990); *Hornick v. Noyes,* 708 F.2d 321, 324-25 n. 8 (7th Cir. 1983); *Benton v. Cousins Props., Inc.,* 230 F.Supp.2d 1351, 1382 (N.D. Ga. 2002), *aff'd,* 97 Fed. Appx. 904 (11th Cir. 2004); *Childs v. Extended Stay of Am. Hotels*, No. 10-3781, 2012 WL 2126845, at *5 n.1 (D. Minn. June 12, 2012). Indeed, without much discussion, both parties appear to concede in their briefs that the *McDonnell Douglas* burden-shifting test should apply to Plaintiff's Title II and Title III Claims.

*Douglas* burden shifting test); *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1056 (8th Cir. 1997) (same). Defendant contends Plaintiff's Title II claim fails as a matter of law because Plaintiff cannot establish either a prima facie case of discrimination under § 2000a or that Defendant's nondiscriminatory explanation for Plaintiff's treatment is a pretext.

Plaintiff has demonstrated that there is at least a genuine issue of material fact that he has met the elements of a prima facie case under §2000a. A plaintiff establishes a prima facie case of discrimination under §2000a by demonstrating that (1) he is a member of a protected group; (2) he was similarly situated by circumstance to other individuals not members of such a group; and (3) he was treated more harshly or disparately than other similarly situated non-group members). *See also Armstrong v. Target Corp.,* No. 10–1340, 2011 WL 1375586, at *2–3 (D. Minn. Apr. 12, 2011) (citing *O'Neal v. Moore,* No. 06–2336, 2008 WL 4417327, at *24 (D. Minn. Sept. 24, 2008), *aff'd,* 355 F. App'x. 975 (8th Cir. 2009)) (same).[3] In responding to the motion for summary judgment, Plaintiff has pointed to record evidence suggesting that Plaintiff and his friends did not

---

[3] Defendant contends that, in order to make a prima facie case under § 2000a, Plaintiff must establish, among other things, that he "attempted to contract for services" and was "denied the right to contract for those services." Defendant further contends that Plaintiff's refusal to return to the restaurant when asked belatedly to do so by a server constitutes a refusal of service which precludes Plaintiff's § 2000a claim. *See* Doc. No. 49, at p. 8. Defendant's proposed standard imposes a more onerous burden on Plaintiff than is required either under the plain language of § 2000a or applicable case law. In addition, Defendant's argument that Plaintiff's rejection of

receive Defendant's normal and customary level of customer service (i.e., no service for twenty-five minutes). Plaintiff further relies on evidence that the same employees who failed to serve Plaintiff and his friends served two white customers who entered the restaurant after Plaintiff in a manner that was consistent with Defendant's standard level of customer service. Plaintiff also cites evidence that no server was disciplined as a result of his complaint regarding the deficient and allegedly discriminatory service he received. Although, as Defendant noted, the number of people in Plaintiff's party may account for why Plaintiff and his friends were ignored while individual white customers were not, Plaintiff has established that there is a material factual dispute regarding whether he has made a prima facie case of race discrimination.

Once Plaintiff demonstrated that there are at least disputed facts relating to his prima facie case, under *McDonnell Douglas* the burden shifted to Defendant to produce evidence of a legitimate nondiscriminatory reason for Plaintiff's experience. *See Nash Finch Co.,* 123 F.3d at 1056. There is no dispute that Defendant has met its burden. Defendant produced deposition testimony of a Human Resources Manager and supporting documents suggesting that the

---

delayed service precludes his claim was rejected in *Lloyd v. Waffle House, Inc.*, 347 F.Supp.2d 249, 254 (W.D.N.C.2004)(construing similar facts in a case brought under 42 U.S.C. §1981). Because I find the facts in *Lloyd* analogous to the facts here, for reasons similar to those set out in *Lloyd,* I find that Plaintiff met his burden in establishing a prima facie case of public accommodation racial discrimination.

restaurant was staffed below company expectations. Defendant also produced evidence that the restaurant may have been mismanaged due to the absence of a General Manager on duty. *See* Def. Stmt. Of Undisp. Facts, Doc. No. 50, at ¶¶31-32. As such, under *McDonnell Douglas*, the burden shifted back to Plaintiff to demonstrate that Defendant's proffered reasons were false **and** that discrimination was the real reason. *See Nash Finch Co.,* 123 F.3d at 1056; *AT&T Corp.,* 422 F.3d at 761-63.

As Plaintiff pointed out, the evidence produced by Defendant in support of its explanation that the restaurant was understaffed is equivocal, at best. Indeed, the evidence produced by Defendant shows that during the time Plaintiff was at the restaurant, there were more servers working than scheduled; the number of servers working ranged from two to three; and the number of customers ranged from eight to ten (including Plaintiff and his three friends). *See* Pl. Br., Doc. No. 55, at 13-14. When this evidence is construed in a light most favorable to Plaintiff, it could support a finding that the restaurant was not understaffed. As such, there is at least a genuine issue of fact as to whether Defendant's explanation that the restaurant was understaffed was false.

However, Plaintiff has failed to demonstrate that there is a genuine issue of fact as to whether Defendant's other explanation – namely, that the restaurant was mismanaged – was false. Defendant's Human Resources Manager testified that at

the time of Plaintiff's visit, there was a gap in coverage and no General Manager was on duty. The Human Resources Manager further testified that the Page Avenue restaurant was experiencing some performance issues due to mismanagement at the time of Plaintiff's visit. Indeed, it is undisputed that there were over twenty complaints made against Defendant's Page Avenue restaurant during the month Plaintiff visited that location. Except for Plaintiff's complaint, none of the other complaints involved allegations of race discrimination; rather, they all involved complaints of rude, poor, or slow service. *See* Doc. No. 50, ¶13. These facts support Defendant's explanation that its Page Avenue location was experiencing performance issues as a result of mismanagement. Evidence that a server offered to wait on Plaintiff, albeit belatedly, and evidence that Plaintiff had visited Defendant's restaurants at other locations in the past without incident also support Defendant's mismanagement explanation.

Plaintiff has failed to produce any evidence, beyond speculation and conjecture, that his treatment was the result of racial animus. Indeed, it is undisputed that the two servers Plaintiff encountered were African American, as was a majority of the staff at Defendant's Page Avenue restaurant. While not dispositive, these facts cut against a finding that racial discrimination accounted for Plaintiff's poor service. *See Haywood v. Lucent Tech., Inc.,* 169 F. Supp.2d 890, 912 at n.7 (N.D. Ill. 2001) (finding that having decisionmakers of the same

protected class provides a strong inference of non-discrimination); *Powell v. Delaney,* No. Civ. A. SA00CA0426NN, 2001 WL 1910556, at *9 (W.D. Tex. June 14, 2001) ("[P]roof that the decision-makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision."). The Court shares Plaintiff's concern that, notwithstanding virtually identical circumstances (i.e., the number of servers, the absence of a General Manager, and the racial makeup of the staff), two white customers entered the restaurant and, from all appearances, received service more consistent with Defendant's normal and expected level of service while Plaintiff and his friends did not. However, the only evidence in the record that potentially links Plaintiff's treatment to his race (as opposed to poor service performance in general) is the summary of a statement given by a former server, Christina Scott, during an investigation of this incident by the Missouri Human Rights Commission. *See* Pl.'s Resp. to Def.'s Stmt. Of Undisp. Facts, Doc. No. 54, at ¶54 & Pl. Ex. 6.

As Plaintiff's own pleadings acknowledge, Ms. Scott's statement poses many problems, not the least of which is its reliability. For instance, there is no evidence that Ms. Scott was under oath when she gave the statement or that she reviewed and confirmed the accuracy of the statement. In addition, the summary contains statements by Ms. Scott that appear to be based on speculation and

conjecture as well as hearsay. However, even when Ms. Scott's statement is considered, it neither rebuts Defendant's "mismanagement" explanation nor constitutes a preponderance of the evidence that Plaintiff's treatment on October 11th was the result of racial discrimination. Although Ms. Scott indicated that she was aware that some servers employed by Defendant believe that African American customers do not tip as well as white customers, there is nothing in the summary to suggest that any employees who held that sentiment were working on October 11th, or that Ms. Scott believed such sentiments played any role in Plaintiff's treatment. Ms. Scott also indicated that she was aware of other customer complaints in the past related to racial discrimination. However, there is nothing in Ms. Scott's statement linking the events of October 11th to race. To the contrary, Ms. Scott offered other possible explanations for Plaintiff's treatment, all of which were unrelated to race. In sum, the MHRA's unverified summary of Ms. Scott's statement is simply too slender a reed on which to hang Plaintiff's public accommodation race discrimination claim.

### B. PUBLIC ACCOMMODATION DISABILITY DISCRIMINATION CLAIM

Plaintiff also claims Defendant violated Title III of the Americans with Disability Act ("ADA"), which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a). "A person alleging discrimination under Title III must show (1) that [s]he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Rose v. Springfield-Greene Cnty. Health Dep't., et al.,* 668 F.Supp.2d 1206, 1212 (W.D. Mo. 2009) (quoting *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1027 (8th Cir. 1999)).

Defendant contends Plaintiff cannot establish a prima facie case under the ADA because there is no evidence he is disabled within the meaning of the ADA. I disagree. "A person is disabled within the meaning of the ADA if he demonstrates that he has a physical or mental impairment that substantially limits one or more of his major life activities, that he has a record of such an impairment, or ***that he is regarded as having such an impairment***." *Amir,* 184 F.3d at 1027 (emphasis added) (citing *Land v. Baptist Med. Ctr.,* 164 F.3d 423, 424 (8th Cir. 1999)). Major life activities include functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*

(citing 28 C.F.R. § 36.104). Plaintiff has established at least a genuine issue of material fact as to whether he is disabled for purposes of the ADA.

There is ample evidence in the record that Plaintiff had experienced a series of problems with his knees and joints leading him to ultimately undergo knee replacement surgery. It is undisputed that Plaintiff was walking with a cane when he went to Defendant's Page Avenue Restaurant and that Plaintiff was initially greeted by two servers who presumably would have seen that Plaintiff was walking with a cane. At a minimum, the record contains facts that would support a finding that Plaintiff is disabled under the ADA because he is regarded as having a physical impairment that substantially limits his major life activities.

Defendant appears to concede the second element of Plaintiff's prima facie case – i.e., that it is a provider of a public accommodation. However, Plaintiff has failed to establish the third element of his prima facie case – namely, that he was discriminated against because of his disability. Plaintiff has failed to provide sufficient evidence from which a reasonable jury could conclude that his treatment at Defendant's restaurant was based on his disability. Although Plaintiff has alleged disparate treatment and has pointed out that two white customers were served while Plaintiff and his three disabled friends were not, Plaintiff has failed to show that those instances involved similarly situated individuals. As Defendant pointed out, the record is silent about whether the two individuals were or were not

disabled. In addition, the two individuals who were served came in alone, not in a group. Given the performance problems evident in the record, it is plausible that the size of Plaintiff's party had an impact on the poor level of service Plaintiff and his friends experienced.

In sum, the evidence is that Plaintiff and his friends were basically ignored for approximately twenty-five minutes. When Plaintiff and his friends attempted to leave, they were followed outside by a server who apologized and offered to wait on Plaintiff. Even when the evidence is construed in favor of Plaintiff, Plaintiff's disability discrimination claim is devoid of any record evidence – even unreliable evidence – from which a fact finder might conclude that Plaintiff's disability was a motivating factor behind the poor or disparate service Plaintiff received. Because I find summary judgment is appropriate, I will not address the remaining arguments raised in Defendant's motion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 48) is **GRANTED**. The Court will issue a separate judgment consistent with this Memorandum and Order.

Dated May 13, 2015.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE